IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLONIAL SURETY COMPANY,** | : | |
| Plaintiff | : | No. 1:09-cv-956 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **DME CONSTRUCTION ASSOCIATES,** | : | (Magistrate Judge Smyser) |
| et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Currently pending before the Court is Plaintiff Colonial Surety Company's motion for summary judgment. (Doc. No. 59.) On February 18, 2011, the Court did not adopt Magistrate Judge Smyser's Report and Recommendation, in which he recommended that Plaintiff's motion for summary judgment be denied to allow for further discovery by Defendants. (Doc. No. 88.) Instead, the Court granted summary judgment to Plaintiff on the issue of liability, but deferred ruling on the damages issue pending limited discovery by Defendants. (Id.) The Court will now grant summary judgment to Plaintiff in the amount of $556,449.76.

**I.     BACKGROUND**

Plaintiff is a Pennsylvania surety company that entered into a general indemnity agreement to execute bonds on behalf of Defendants. (See Doc. No. 77 at 5.) Defendants Peter Chardon and Darlene Edwards, husband and wife, own Defendant DME, an incorporated business with its principal place of business in New York. (Id.) Plaintiff issued seven different bonds on behalf of Defendants. (Id.) In its complaint, Plaintiff alleges that numerous payment and performance claims have been made against the bonds, but Defendants refused to cooperate in the investigation of the claims and breached the indemnity agreement "by not providing

1

access to financial information and by failing to deliver collateral security as demanded by [Plaintiff]." (Id. at 5-6.) According to the complaint, nearly all of Plaintiff's losses relate to a roof replacement project being performed by Defendants at the Navy Depot in Mechanicsburg, Pennsylvania. (Id. at 6.)

Plaintiff filed its motion for summary judgment on September 24, 2010. (Doc. No. 59.) In its complaint, Plaintiff listed six different counts for relief; however, Plaintiff's motion for summary judgment "does not address all of the counts in the . . . complaint, and does not seek relief that is the relief requested in any of the particular counts of the complaint." (Doc. No. 77 at 8.) Rather, Plaintiff's motion argues only that it is entitled to summary judgment for the losses that it incurred pursuant to the indemnity agreement that it entered with Defendants.[1] (Id.)

According to Plaintiff's statement of undisputed facts, as of August 25, 2010, at least $512, 288.11 in losses had been incurred by Plaintiff "by reason of having executed Bonds for the [D]efendants." (See Doc. No. 77 at 8; Doc. No. 60 ¶ 16.) As evidentiary support for this allegation, Plaintiff submitted the affidavits of Wayne Nunziata, Plaintiff's President, and Frederick Gallo, Plaintiff's Treasurer and Controller, and accompanying exhibits. Plaintiff now asserts that it is entitled to summary judgment for its losses through June 30, 2011, in the amount of $556,449.76 in accordance with the terms of the indemnity agreement and Pennsylvania common law. (Doc. No. 60 ¶ 37; Doc. No. 111 at 15; Doc. No. 109.) In support of this claim, Plaintiff directed the Court to the following language in the indemnity agreement:

---

[1] Plaintiff originally sought summary judgment in the amount of $512,288.11, representing its losses through August 25, 2010. (Doc. No. 61 at 5.) Plaintiff now seeks summary judgment in the amount of $556,449.76, representing its losses through June 30, 2011. (Doc. No. 111 at 15; Doc. No. 109.)

> [Defendants] agree to perform all the conditions of each Bond and Contract and to indemnify and save harmless [Plaintiff] from and against any and all (i) demands, liabilities, losses, costs, damages or expenses of whatever nature or kind, . . . .
>
>> [Plaintiff] shall have the right to incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigation, accounting, engineering and legal services, and [Plaintiff]'s good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon [Defendants].
>> . . . .
>>
>> [A]n itemized statement of the aforesaid loss and expense, sworn to by an officer of [Plaintiff], or the vouchers or other evidence of disbursement by [Plaintiff], shall be prima facie evidence of the fact and extent of the liability hereunder of [Defendants].

(Doc. No. 1-4 ¶¶ 3-4.) Plaintiff submitted a list of payments made by Plaintiff to various vendors, its attorney, and a consulting firm. (See Doc. Nos. 59-9; 108-1.) The listing includes a figure for "Total Loss Paid" and a figure for "LAE," which refers to "loss adjustment expenses" made to Attorney Larry Miller and Cashin, Spinelli & Feretti ("Cashin"), the consulting firm that supervised Defendants' work on the roof replacement project at the Navy Depot in Mechanicsburg. (Id.; see also Doc. No. 88 at 7.) These types of expenses are listed as being recoverable by the surety under the terms of the indemnity agreement. (See Doc. No. 1-4 ¶ 4(B) & (E).)

On November 8, 2010, Defendants filed a brief in opposition to the summary judgment motion, arguing that there are genuine issues of material fact that preclude summary judgment.[2]

---

[2] Defendants filed their own version of a statement of "undisputed material facts" with their opposition brief. However, Defendants' statement did not comply with Local Rule 56.1 because it did not "include references to the record that support the denials of [P]laintiff's

(Doc. No. 65.)

In his Report and Recommendation, Magistrate Judge Smyser recommended that this Court deny Plaintiff's summary judgment motion in order to allow Defendants time to complete discovery pursuant to Celotex Corp. v. Catrett, 477 U.S. 317 (1986). (Doc. No. 77 at 13-14.) Judge Smyser noted that because there was a prima facie evidence clause in the indemnity agreement, Plaintiff's motion for summary judgment placed the burden of proof on Defendants "to show that any particular expenditures were not correctly made" by Plaintiff. (Id. (citing Fallon Elec. Co. v. Cincinnati Ins. Co., 121 F.3d 125, 129 (3d Cir. 1997) ("We conclude that the Pennsylvania courts would hold that a 'prima facie evidence' clause in an indemnity agreement shifts to the indemnitor the burden of proving that the costs incurred were not recoverable."))) As a result, Judge Smyser noted that the Celotex principle – ordinarily in place to protect a plaintiffs' claims from being dismissed before adequate discovery – was equally applicable in this case to protect the rights of Defendants. (Id. at 13-14 & n.6.)

Plaintiff objected to the Report and Recommendation and argued that Defendants had not pursued discovery, and "failed to identify any outstanding discovery that would result in the demonstration of a genuine issue of material fact." (Doc. No. 78 ¶ 11.) On February 18, 2011, the Court issued an order in which it did not adopt Magistrate Judge Smyser's Report and Recommendation. (Doc. No. 88.) The Court granted Plaintiff's summary judgment motion as to liability, but deferred ruling on the issue of the extent of liability pending limited discovery and supplemental briefing. (Id.)

---

statements of factual matters." (Doc. No. 77 at 7 n.5; see also Doc. No. 64.) Defendants also filed four separate affidavits in support of their brief in opposition. (Doc. Nos. 66-69.)

On July 1, 2011, Defendants submitted a supplemental brief opposing Plaintiff's motion for summary judgment, accompanied by an affidavit of Peter Chardon, President of DME, arguing that the losses allegedly paid by Plaintiff to suppliers and subcontractors are inaccurate, and that the losses allegedly paid by Plaintiff to Cashin and to Attorney Miller were paid in bad faith.  (Doc. No. 104 ¶¶ 4, 9-38; Doc. No. 105.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the nonmoving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex, 477 U.S. at 322-23.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322-23.

Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. Specifically, the Court may "enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute," and thereby treat such a fact "as established in the case." Fed. R. Civ. P. 56(g).

## III. DISCUSSION

In this case, the Court's jurisdiction is based on diversity of citizenship, and the law of Pennsylvania governs substantive issues. See U.S. Fid. & Guar. Co. v. Bilt-Rite Contractors, Inc., No. 04-cv-1505, 2005 WL 1168374, at *3 n.1 (E.D. Pa. May 16, 2005) (explaining Pennsylvania's conflict of law rules in a similar context). Under Pennsylvania law, a court construing a contract must determine the intention of the parties, and should do so by examining the language in the agreement. Id. (citing Fallon Elec. Co., 121 F.3d at 127).

The prima facie evidence clause of the indemnity agreement between Plaintiff and Defendants provides Plaintiff with the right to "incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigation, accounting, engineering and legal services, and [Plaintiff]'s good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon [Defendants]." (Doc. No. 1-4 ¶ 4(B).) The agreement further provides that, in a claim under the indemnity agreement, Plaintiff is entitled to be reimbursed for attorney's fees, and that "an itemized statement of the aforesaid loss and expense, sworn to by an officer of [Plaintiff], or the vouchers or other evidence of disbursement by [Plaintiff], shall be prima facie evidence of the fact and

extent of the liability hereunder of [Defendants]." (Id. ¶¶ 4(D), (E).)

"Similar prima facie evidence clauses have been enforced routinely by courts and have served as a basis for summary judgment." Safeco Ins. Co. v. DeMatos Enter., Inc., No. 02-cv-2899, 2003 WL 21293825, at *3 n.7 (E.D. Pa. April 10, 2003) (citing United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 582 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins., No. 83-cv-5733, 1989 WL 55388 (E.D. Pa. May 23, 1989)); see also Fallon Elec. Co., 121 F.3d at 129; Bilt-Rite, 2005 WL 1168374, at *3. When accompanied by the proper documentation, the clause shifts the burden of proof to Defendants to prove that the expenses incurred by Plaintiff were not recoverable. Fallon Elec. Co., 121 F.3d at 129.

Here, Plaintiff provided an affidavit of Wayne Nunziata, President of Colonial, in which he swears that all of the losses in the itemized statement attached to the affidavit were made in good faith. (Doc. No. 59-6 ¶¶ 19-24, 37; Doc. No. 59-7 at 6-9.) Plaintiff also submitted an affidavit of Audie Murphy, the controller and treasurer of Colonial, in which she swears that as of June 30, 2011, "Colonial's total losses because it wrote bonds for Defendants were $556.449.76," and that "[a]ll payments that Colonial received from the Navy have been applied to off-set Colonial's losses." (Doc. No. 109.) The Court finds that these affidavits are sufficient to shift the burden to Defendants.

The Third Circuit explained, in Fallon Elec. Co., that what Defendants must "demonstrate to escape liability for [the disputed expenses] depends upon the precise language used in the agreement." 121 F.3d at 129. As the indemnity agreement provides that Plaintiff's "good faith determination as to the necessity or advisability of any such expense shall be final

7

and conclusive," Defendants must prove that Plaintiff acted in bad faith. See Fallon Elec. Co., 121 F.3d at 129; Bilt-Rite, 2005 WL 1168374, at *4. The standard of proof is preponderance of the evidence. Mountbatten Sur. Co. v. Jenkins, No. 02-cv-8421, 2004 WL 2297405, at *6 (E.D. Pa. Oct. 13, 2004).

"Bad faith requires a showing of recklessness or improper motive such as self-interest or ill will." Feibus, 15 F. Supp. 2d at 585 (citing Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994); Klinger v. State Farm Mut. Auto. Ins. Co., 895 F. Supp. 709, 713 (M.D. Pa. 1995)). Good faith clauses are often used in surety agreements in the construction industry to "facilitate the handling of settlements by sureties and protect them from unnecessary and costly litigation." Id. Courts have reasoned that "the expense, delay, trouble, and risk of loss to the [surety] is a sufficient safeguard against an unwarranted payment." Id. (quoting Engbrock v. Federal Ins. Co., 370 F.2d 784, 786 (5th Cir. 1967) (alteration in original)). Nonetheless, a "claim of fraud or bad faith acts as a defense and, if properly supported, creates a genuine issue of material fact." Id.

Defendants raise several arguments as to why summary judgment should not be granted in this case, claiming that there are disputed issues of fact regarding Plaintiff's alleged losses for payments to subcontractors and suppliers, as well as Plaintiff's alleged losses for payments to Cashin and Attorney Miller. (Doc. No. 105.) First, Defendants allege that Plaintiff received a "further payment from the contracting agency which the surety did not properly credit DME." (Id. at 4.) Defendants do not reference the record to support this allegation, and the Court notes that Defendants claimed a $10,000 payment in Chardon's Affidavit, and a $7,000 payment in their brief. (See Doc. No. 104 ¶ 4; Doc. No. 105 at 2.) These inconsistent and unsupported

allegations do not support a finding of bad faith on the part of Plaintiff.  See Feibus, 15 F. Supp. 2d at 587 ("Bad faith requires a showing of dishonest purpose or improper motive.").

Next, Defendants make several arguments about Plaintiff's payments to Attorney Miller and Cashin.  Defendants claim that "[t]he monies expended by the surety for legal fees and consultants' fees appear to have no rational basis for their expenditure."  (Doc. No. 105 at 5.)  Defendants scrutinize several aspects of Plaintiff's dealings with Attorney Miller, arguing that he is in-house counsel for Plaintiff,[3] and that the amount that he billed to Plaintiff during the one-year period starting in September 2008 is "impossible for a solo practitioner."  (Id. at 6.)  Defendants argue that "[f]or Colonial to pay such invoices without contesting same is bad faith in and of itself."  (Id.)  These allegations of excessive payments, at most, support a finding of negligence; accordingly they cannot as a matter of law rise to the level of bad faith.  See Feibus, 15 F. Supp. 2d at 587 (citing Engbrock, 370 F.2d at 785-87; Fireman's Fund Ins. Co. v. Nizdil, 709 F. Supp. 975, 976-77 (D. Or. 1989)).  Defendants have not met their burden of showing a dishonest purpose or improper motive as to the payments to Attorney Miller.  See id.

Finally, Defendants argue that the invoices submitted by Cashin are "suspect."  (Doc. No 105 at 7.)  Defendants note that Cashin invoiced Plaintiff for travel time and tolls, and that Plaintiff should have engaged a consultant closer to the site.  (Id.)  Moreover, in Chardon's affidavit, he argues that Cashin's on-site consultant, Joseph Lavalle, was not at the site for full

---

[3] Defendants argue that there is an in-house relationship between Plaintiff and Attorney Miller due to the fact that Miller's fax cover sheet includes "Colonial Surety" in the letterhead. (Doc. No 105 at 7; see also Doc. No 104-2 at 2.)  Attorney Miller stated, in his sworn affidavit, that he is a solo practitioner, and that he uses Plaintiff's office as his New Jersey office as required by New Jersey Rules of Court.  (Doc. No. 110 ¶ 17.)

days, contrary to Cashin's invoices, and that when he was on the site he would "sit at a picnic table on the ground talking on the phone, taking notes of his phone calls or sitting in the sun." (Doc. No. 104 ¶¶ 9-23.) Chardon argues that, as Cashin's charges for a four-month period amount to approximately $175,000, "bad faith is prima facie in the purported amounts charged." Again, the burden is on Defendants to prove bad faith, and allegations of excessive payments, or even "gross negligence or bad judgment" are insufficient to amount to bad faith. Feibus, 15 F. Supp. 2d at 587 (citing Klinger, 895 F. Supp. at 714). The Court finds that Defendants arguments about Plaintiff's payments to Cashin and to Attorney Miller can be characterized as allegations of excessive payment or negligent oversight, and thus do not raise a genuine issue of material fact regarding whether Plaintiff acted in bad faith in making the payments.

The Court has provided Defendants with time to conduct additional discovery on the issue of damages. After conducting such discovery, Defendants have come forward with no evidence to "support their claim that the payments made to Attorney Miller and Cashin for loss adjustment expenses were made in bad faith," or that Plaintiff received a "further payment from the contracting agency which the surety did not properly credit DME." (See Doc. No. 88 at 13; Doc. No. 105 at 2.) Defendants have failed to raise a genuine issue of material fact for trial, and "[i]n the absence of contravening evidence from [D]efendants, the [P]laintiff's submission of detailed expense reports as well as sworn declarations demonstrating good faith in making such payments is sufficient to prevail on a motion for summary judgment." Feibus, 15 F. Supp. 2d at 587.

## IV. CONCLUSION

Defendants have not provided sufficient evidence to prove, by a preponderance of the

evidence, that Plaintiff violated the good faith clause of the indemnity agreement in its payments to suppliers, subcontractors, Cashin, and Attorney Miller. Accordingly, the Court will grant summary judgment in favor of Plaintiff and award Plaintiff $556,449.76.

    An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COLONIAL SURETY COMPANY,** | : | |
|     **Plaintiff** | : | No. 1:09-cv-956 |
| | : | |
|     v. | : | **(Chief Judge Kane)** |
| | : | |
| **DME CONSTRUCTION ASSOCIATES,** | : | **(Magistrate Judge Smyser)** |
| **et al.,** | : | |
|     **Defendants** | : | |

## ORDER

**AND NOW**, on this 30th day of September 2011, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for summary judgment (Doc. No. 59) is **GRANTED** and **JUDGMENT** is entered in the above case for Plaintiff and against Defendants in the amount of $556,449.76.


                                                    S/ Yvette Kane
                                                  Chief Judge Yvette Kane
                                                  United States District Court
                                                  Middle District of Pennsylvania